# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1196

JERRY G. DALTON, APPELLANT,

v.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 14, 2006            Decided     February 16, 2007 )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Pamela M. Nash*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before MOORMAN, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*: The appellant, Jerry G. Dalton, appeals through counsel a May 12, 2004, decision of the Board of Veterans' Appeals (Board) that denied service connection for residuals of a back injury, and denied entitlement to an effective date earlier than June 20, 2000, for the assignment of a 70% disability rating for post-traumatic stress disorder (PTSD) with major depression and a total disability rating based on individual unemployability (TDIU). Record (R.) at 1-21. The Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm in part, and vacate in part, the May 2004 Board decision, and remand two matters for readjudication consistent with this opinion.

## I. FACTS

The appellant served on active duty in the U.S. Army from October 1966 to September 1968, including service in Vietnam. R. at 25, 58. An April 15, 1967, service medical record (SMR) reflects that he was involved in an automobile accident and complained of pain in his left side. R.

at 37. X-rays of the ribs were negative for fractures. R. at 36. The diagnostic impression was "left flank contusion." R. at 37. At separation, the appellant denied ever having had any back problems. R. at 42.

In June 1995, a VA regional office (RO) awarded service connection for PTSD and assigned a 50% disability rating. R. at 58-60. Thereafter, in June 1996, March 1997, and February 1998, the appellant filed claims for an increased disability rating for PTSD. R. at 85, 103, 116. In June 1998, the appellant, through counsel, disagreed with the denial of his claims and initiated an appeal. R. at 129-41, 157-60. In April 1999, the Board issued a decision denying an increased disability rating for PTSD. R. at 177-83. That decision was not appealed and it became final.

On June 20, 2000, the RO received a statement in support of claim in which the appellant stated: "Amend original claim to add back injury. I hurt my back in Chu Lai, Vietnam in 1968. A progress note is in my SMR showing I went on sick call. I am filing for [service connection] under the combat advantage rule. Amend to add any secondary conditions to original back injury." R. at 205. He also stated that "this is an informal claim for I.U. [TDIU] benefits. I am unable to work because of my PTSD and back condition." *Id.*

On July 21, 2000, VA provided the appellant with a psychiatric compensation and pension examination. R. at 263-66. The examiner recorded the appellant's employment history, which included his assertion that he had had his own auto repair shop until 1994 when he reportedly closed it because of his back condition. R. at 264. The examiner reported that the appellant "was not involved in combat but he was stationed in a combat zone. Their area was at times under mortar and rocket attack and he often was in fear for his life. He did not see anyone actually killed." R. at 263. The appellant gave a history of recurrent dreams of women and children rummaging through garbage and eating discarded food. He also reported reexperiencing, through dreams, an incident that occurred when an ammunition dump exploded and the impact knocked him into a wall. *Id.* The examiner noted that "he was in Vietnam and, although he was not in direct combat situations, he was in dangerous situations and fearful for his life." R. at 266. The examiner diagnosed PTSD, chronic; major depression, recurrent, non-psychotic, severe. *Id.* The examiner also opined that "[a]t this point, he does not seem capable of maintaining employment." *Id.*

2

On November 1, 2000, the appellant, through the same counsel representing him here on appeal, sent a letter to the RO stating that he had filed a claim for TDIU three months earlier and that pursuant to the VA examiner's conclusions a TDIU rating should be awarded. R. at 280. A VA Form 21-8940, entitled "Veterans Application for Increased Compensation Based on Unemployability," was also received by the RO on November 17, 2000. R. at 282-83.

On January 24, 2001, the RO increased the appellant's PTSD disability rating to 70%, awarded TDIU, and assigned a June 20, 2000, effective date to both awards. R. at 285-93. With regard to the TDIU award, the RO noted: "Evidence received shows the veteran has been unable to work since 1994, due to his service connected [PTSD]. . . . The veteran is entitled to receive individual unemployability benefits effective June 20, 2000." R. at 291. Thereafter, in September 2001, the RO denied service connection for a back injury because there was no evidence that the appellant's back condition was related to service. R. at 441-46.

On January 24, 2002, the appellant filed a Notice of Disagreement (NOD) with the September 2001 RO decision that denied his back claim. R. at 448-53. On the same date, he also filed an NOD with the January 24, 2001, RO decision that assigned the June 20, 2000, effective date for his 70% disability rating for PTSD and TDIU. R. at 457-63. He argued, inter alia, that

> pursuant to the [Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096], retrospective medical opinions should have been obtained to determine whether or not it is factually ascertainable that the veteran's condition increased in severity during the time period of January 1995 to June 2000 and warranted a disability rating in excess of 50% for PTSD [with depression] and to determine whether or not the claimant was unable to perform substantial gainful employment for the time period of January 5, 1995, to June 20, 2000.

R. at 461.

In April 2003, VA provided the appellant with a compensation and pension examination of his back. R. at 496-99. He reported to the examiner that he had hurt his back in Vietnam when an ammunition dump exploded. R. at 496. The examiner performed a physical examination, and reviewed current medical records and the claims file. *Id.* The examiner concluded: "After full review of [the claims] file and [SMRs], I see no evidence of any back injury while in service and it is my medical opinion that it is not likely that the veteran's present back problems are related to his military service." R. at 498.

3

In June 2003, the Board remanded the appellant's claims to the RO for additional development. R. at 507-13. In July and September 2003, the RO sent him letters informing him of the status of his claim for service connection for a back disability and entitlement to an earlier effective date for his 70% disability rating for PTSD and TDIU. R. at 507-12, 525-31. An August 2003 Supplemental Statement of the Case (SSOC) continued to deny an effective date earlier than June 20, 2000, for his 70% disability rating for PTSD and TDIU. R. at 515-23. In his Substantive Appeal, the appellant, through counsel, argued, inter alia, that the January 2001 RO decision was issued prematurely because he had not received notice in compliance with the VCAA prior to the adjudication. R. at 533-39. In particular, he argued that, had the Secretary complied with the notice requirements, he would have had up to one year to submit the evidence necessary to substantiate his claim–evidence that he had been unable to work from June 1997 to June 2000 as a result of his service-connected PTSD. R. at 535.

On May 12, 2004, the Board issued the decision here on appeal. R. at 1-21. In that decision, the Board found that (1) the appellant's back condition was not related to service, (2) entitlement to an increased rating for PTSD was first demonstrated subsequent to June 20, 2000, and (3) a formal claim for TDIU was first filed on June 20, 2000. R. at 4.

On appeal, the appellant raises three arguments.[1] First, with respect to his appeal of the effective date assigned to his 70% disability rating for PTSD and TDIU, he asserts that VA did not provide him with adequate notice pursuant to 38 U.S.C. § 5103(a). Appellant's Brief (Br.) at 7-12. The essence of his argument is that VA did not inform him of the *missing* evidence that would otherwise entitle him to an earlier effective date. Br. at 7.

Second, he contends that the Board erred when it failed to consider and apply applicable provisions of law and regulation. Br. at 12-15. Although the appellant's briefing on this matter is not a model of clarity, it appears, from his reply brief, that he is only contesting the effective date assigned to his award of TDIU. Reply Br. at 8 n.2 ("Mr. Dalton did not make a claim that the effective date 'for PTSD' was wrongly decided by VA. . . . Only the effective date for the award of TDIU is at issue."). His argument here is twofold. First, he asserts that the Board erred when it

---

[1] The appellant raised a fourth argument in his opening brief; however, that argument was subsequently withdrawn in his reply brief. Br. at 15-18, Reply Br. at 1.

4

concluded, as a matter of law, that he was not entitled to an effective date earlier than June 20, 2000, for his award of TDIU. Br. at 12-13. The main thrust of this argument is that a claim for TDIU is an application for increased compensation and the Board should have considered 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) (2006). *Id.* Second, he asserts that, when considering his eligibility for TDIU, the Board should have considered the holdings in *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001); *Bowling v. Principi*, 15 Vet.App. 1 (2001); and 38 C.F.R. §§ 3.340(a) and 4.16(b) (2006). Br. at 14-15.

Third, with regard to his claim for service connection for a back injury, he contends that the Board misinterpreted 38 U.S.C. § 1154(b) and the presumption of service connection under 38 U.S.C. § 105(a). Br. at 18-29. According to the appellant, section 1154(b), either alone, or together with section 105(a), creates a presumption of service connection that eliminates a veteran's need to submit medical nexus evidence, unless the presumption is rebutted by clear and convincing evidence to the contrary. *Id.*

In response to the appellant's first argument, the Secretary asserts that the VCAA does not require VA to give notice upon a challenge to the downstream "effective date" element of a claim. Secretary's (Sec'y) Br. at 10. At oral argument, the Secretary argued, in the alternative, that any notice error was nonprejudicial because the appellant, through his counsel, demonstrated that he had actual knowledge of what was necessary to substantiate his claim. Responding to the appellant's second argument, the Secretary agrees that section 5110(b)(2) could apply to the effective date of TDIU, if the TDIU claim arises in conjunction with evidence of a worsening of a service-connected disability. Sec'y Supplemental (Suppl.) Br. at 8-9. He contends where the basis for the TDIU award is satisfaction of the criteria established by 38 C.F.R. § 4.16, i.e., employability status, and not worsening of the service-connected disability, section 5110(b)(2) is not implicated. *Id.* Finally, in response to the appellant's third argument, the Secretary asserts that the presumptions created by sections 1154(b) and 105(a) do not eliminate a veteran's burden to demonstrate a medical nexus between a current disability and an injury or disease in service. Sec'y Br. at 16-17. Therefore, he asserts that there exists a plausible basis to support the Board's denial of an award of service connection for residuals of a back injury.

## II. ANALYSIS

### A. Compliance With the Duty To Notify

Pursuant to the VCAA, upon receipt of a complete or substantially complete application for benefits and prior to an initial unfavorable decision on a claim by an agency of original jurisdiction, the Secretary is required to inform the appellant of the information and evidence not of record that (1) is necessary to substantiate the claim, (2) the Secretary will seek to obtain, if any, and (3) the appellant is expected to provide, if any, and to request that the claimant provide any evidence in his possession that pertains to the claim. *See* 38 U.S.C. § 5103(a); *Pelegrini v. Principi*, 18 Vet.App. 112, 119, 121 (2004); *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002); 38 C.F.R. § 3.159(b) (2006). Failure to comply with any of these requirements may be remandable error. *Quartuccio*, 16 Vet.App. at 183. If the Court finds such an error, it must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2); *see Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004 ); *Overton v. Nicholson*, 20 Vet.App. 427, 435-36, 443 (2006) (failure to provide claimant notice of information necessary to substantiate claim has "natural effect of producing prejudice").

July 2003 letter*s* from the RO were the only documents relied upon by the Board in determining that VA had properly notified the appellant of the information and evidence necessary to substantiate entitlement to an earlier effective date. R. at 7. Upon review of the record, the Court notes that there is only one letter dated July 2003, and that letter did not address the appellant's award of an increased disability rating for his PTSD and his award of TDIU, or what is necessary to warrant an earlier effective date for those claims.[2] R. at 507-12. There being in the record no pre-adjudicatory letter relied upon by the Board as satisfying VA's duty to notify, the Court holds that the Board erred in concluding that the duty to notify had been satisfied. R. at 8; *see Locklear v. Nicholson*, 20 Vet.App. 410, 413 (2006) (Board findings regarding compliance with the duty to notify are findings of fact reviewed under the "clearly erroneous" standard of review); *see also*

---

[2] The Court notes that the record does contain a September 2003 letter that purports to address the appellant's entitlement to an earlier effective date for his 70% disability rating for PTSD and his award of TDIU. However, nothing in the September 2003 letter can be read as informing him of what information and evidence is necessary to establish entitlement to an earlier effective date. R. at 525-30.

*Mayfield v. Nicholson*, 444 F.3d 1328, 1335 (Fed. Cir. 2006) (whether a communication satisfies section 5103(a) is a "substantially factual determination").

Having found error, the Court must "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2); *see Conway*, 353 F.3d at 1374-75; *Overton* 20 Vet.App. at 434-38. Here, the Secretary asserts that any notice error was not prejudicial because the appellant, through his counsel, demonstrated actual knowledge of the information and evidence necessary to substantiate his claim. *See Overton*, 20 Vet.App. at 438 (holding that counsel's actions and communications to VA are factors to consider when determining whether a claimant had a meaningful opportunity to effectively participate in the processing of his claim). The Court agrees.

Significantly, as can be gleaned from the record, appellate counsel has been representing Mr. Dalton at the RO, in pursuit of an increased disability rating for his PTSD, since approximately 1998. R. at 129-32, 140-41, 144-46, 157-59, 186-87, 194-96, 279-80, 457-63, 491-92, 533-39, 546-47. Counsel has also been representing him in pursuit of an award of TDIU and assignment of an earlier effective date for that award since 2000. R. at 279-80, 457-63, 491-92, 533-39, 546-47. The crux of the appellant's argument is that, at the time of the initial adjudication in January 2001, he believed that he had submitted sufficient evidence, and VA had not given him any reason to believe that the evidence of record would not prove his claim. The problem with the appellant's argument is that it misunderstands the scope of the notice required by the VCAA. As we recently held in *Locklear*, *supra*, VA is not required to provide a claimant with a predecisional adjudication. *See Locklear*, 20 Vet.App. at 415-16. In other words, the VCAA notice requirement deals with evidence gathering and does not require VA "to rule on the probative value of information and evidence presented in connection with a claim prior to rendering a decision on the merits of the claim itself." *Id.* at 416; *see also Dingess v. Nicholson*, 19 Vet.App. 473, 490 (2006) ("Within the VA adjudicatory scheme, section 5103(a) is focused on notice that is required to be provided to a claimant upon receipt of a complete or substantially complete application for benefits and prior to an initial adjudication.").

We are also convinced that the appellant, through his counsel, demonstrated actual knowledge of the information and evidence necessary to establish entitlement to an earlier effective date. In particular, the arguments the appellant presented to the RO in his January 2002 NOD demonstrate his awareness of the need for medical evidence "to determine whether or not it is

factually ascertainable that the veteran's condition increased in severity" and whether he was "unable to perform substantial gainful employment" prior to June 20, 2000, the effective date initially assigned. R. at 461.

These matters were remanded by the Board in June 2003 for additional development and compliance with the VCAA, and were subsequently readjudicated by the RO in the August 2003 SSOC. R. at 501-05, 515-23; *see Prickett v. Nicholson*, 20 Vet.App. 370, 377 (2006). Therefore, because the record demonstrates that the appellant, through his counsel, was aware of the information and evidence necessary to establish entitlement to an earlier effective date prior to the remedial remand, we conclude that the appellant was afforded a meaningful opportunity to effectively participate in the adjudication of his claims for an earlier effective date for his 70% disability rating for PTSD and award of TDIU. Hence, we conclude that he was not prejudiced by VA's failure to satisfy the duty to notify prior to the initial adjudication. *See* 38 U.S.C. § 7261; *Conway* and *Overton*, both *supra*. There being no other error asserted as to the denial of an earlier effective for his 70% disability rating for PTSD, the Board's decision on that matter will be affirmed. The appellant's entitlement to an earlier effective date for his TDIU award is addressed below.

B. Entitlement to an Earlier Effective Date for TDIU

In the instant case, the Board determined that "[e]ntitlement to an effective date earlier than June 20, 2000[,] for the award of TDIU [was] not shown as a matter of law." R. at 5 (citing 38 U.S.C. § 5110(a)). In reaching this determination, the Board focused on June 20, 2000, as the date of the claim for TDIU, and searched the record for any prior formal or informal claim. R. at 20-21. Because there was no evidence of an intent to apply for TDIU benefits prior to June 20, 2000, the Board concluded that June 20, 2000, was the appropriate effective date. R. at 21.

There is no dispute on appeal that June 20, 2000, was the date of the appellant's claim for TDIU. The question presented by this appeal is whether the grant of an application for TDIU is an award of increased compensation governed by the provisions of 38 U.S.C. § 5110(b)(2) for purposes of assignment of an effective date? In other words, when assigning the effective date, must the Board consider whether it is factually ascertainable that an increase in disability sufficient to support the award occurred in the one year prior to the application for TDIU?

8

## 1. Statutory and Regulatory Provisions

Section 5110(a) of title 38, U.S. Code, governs the assignment of an effective date for an award of benefits:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a). The Secretary's implementing regulation similarly states that the effective date shall be the date of receipt of claim or the date entitlement arose, whichever is later, unless the claim is received within one year after separation from service. *See* 38 C.F.R. § 3.400.

An exception to this general rule occurs when there is an award of increased compensation. "The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date." 38 U.S.C. § 5110(b)(2); *see also Harper v. Brown*, 10 Vet.App. 125, 126 (1997) (finding exception in section 5110(b)(2) limited to instances where the increase in service-connected disability precedes the claim); 38 C.F.R. § 3.400(o)(2). Again, the Secretary's implementing regulation, like the statute, provides that the effective date shall be the "[e]arliest date it is factually ascertainable that an increase in disability had occurred if claim is received within [one] year from such date otherwise, date of receipt of claim." 38 C.F.R. § 3.400(o)(2).

## 2. The Parties' Arguments

The appellant contends that an award of TDIU is an award of increased compensation, and therefore, the Board must consider whether it is factually ascertainable that an increase in disability occurred within one year prior to the application. Br. at 12-13. The Secretary concedes that there may be instances where the provisions of 38 U.S.C. § 5110(b)(2) are implicated, e.g., when the TDIU claim arises in conjunction with the worsening of a service-connected disability. Sec'y Suppl. Br. at 8-9. However, the Secretary suggests that, because an award of TDIU is based on a finding of individual unemployability, not all awards of TDIU result from an increase in disability, and therefore, not every award falls within the exception provided in section 5110(b)(2). *Id.*

Notwithstanding this general caveat, on the facts of this case, the Secretary conceded at oral argument that the appellant's award of TDIU was based in part on a worsening of the appellant's service-connected PTSD and his inability to maintain substantially gainful employment as a result of that condition. Nonetheless, the Secretary continues to maintain that a remand is not warranted because, he asserts, the Board applied section 5110(b)(2) and that there is no factual basis in the record for the grant of an earlier effective date. In this regard, the Secretary contends that the medical evidence demonstrates that the appellant's PTSD worsened in July 2000, after the claim for TDIU was filed. Finally, he asserts that the appellant could not have met the criteria for TDIU earlier than the date of his increased schedular rating for PTSD, because the appellant was rated only 50% disabled prior to June 20, 2000. *See* 38 C.F.R. § 4.16(a) (generally requiring a single service-connected disability to be rated at 60% or more for an award of TDIU).

First, we address whether we agree that the provisions of section 5110(b)(2) apply to the appellant's award of TDIU. Then, we discuss and reject the Secretary's assertions that a remand is not warranted under these circumstances.

### 3. TDIU–an Award of Increased Compensation

To be eligible for a TDIU rating, a claimant must be unemployable as a result of service-connected disabilities. Pursuant to 38 C.F.R. § 4.16(a), a veteran who is unable to secure or follow a substantially gainful occupation because of service-connected disabilities and who has either one service-connected disability rated at least 60% or multiple service-connected disabilities yielding a combined rating of 70% or more (with at least one of those disabilities rated 40% or more) is eligible for a TDIU rating. In addition, "veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in [38 C.F.R. § 4.16(a)]" should be given extraschedular consideration. 38 C.F.R. § 4.16(b).

As stated above, the question presented by this appeal is whether an award of TDIU is an award of increased compensation for purposes of assigning an effective date pursuant to 38 U.S.C. § 5110(b)(2). In the instant case, the award of TDIU was based on 38 C.F.R. § 4.16(a)–in January 2001, the RO determined that the appellant was unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities and at the time increased the appellant's disability rating for service-connected PTSD from 50% to 70%, meeting the TDIU eligibility

10

requirement that a veteran have a service-connected disability rating of at least 60%. The Secretary concedes, and the Court agrees, that under the facts presented by this appeal, the appellant's award of TDIU was an award of increased compensation. Therefore, the Board was required to consider and apply 38 U.S.C. § 5110(b)(2). The basis for our conclusion can be found in our caselaw.

Generally, in the context of an award of increased compensation, we have held that "[s]ection 5110(b)(2) is invoked only where it has been determined that the evidence warrants an increase to the next disability level." *Hazan v. Gober*, 10 Vet.App. 511, 519 (1997). In *Wood (Clarence) v. Derwinski*, we found that an application "for unemployability compensation [is] an application for 'increased compensation' within the meaning of [section 5110(b)(2)]." 1 Vet.App. 367, 369 (1991). In reaching that determination, we explained that the appellant, who was already rated 60% disabled for his service-connected residuals of lumbar spine fusions, was "merely attempting to show that his condition was more incapacitating than the level at which it was then evaluated." *Id.* at 368-69; *see also Green v. Brown*, 10 Vet.App. 111, 119 (1997) ("[S]ection 5110(b)(2) plainly applies after its enactment to the hypothetical veteran who, claiming an increase in disability, is awarded a TDIU rating."). Consistent with our holding in *Wood (Clarence)*, *supra*, we reiterated in *Norris v. West*, that "under the VA statutory and regulatory scheme evidence of a veteran's unemployability arising from an already allowed service-connected disability is indeed evidence of an increase in the severity of that disability." 12 Vet.App. 413, 420 (1999); *see also Hurd v. West*, 13 Vet.App. 449, 451-52 (2000) (applying rules governing effective dates for increased ratings to TDIU award).

Initially, we note that there can be no doubt that an award of TDIU to a veteran who was previously rated less than 100% disabled is an "increase" in compensation. *See Norris*, 12 Vet.App. at 420 (informal claim for TDIU is, in essence, a claim for an increased rating). This conclusion is supported by the Secretary's form, VA Form 21-8940, entitled "Veteran's Application for *Increased Compensation* Based on Individual Unemployability." R. at 282 (emphasis added). Second, as we stated in *Norris* and *Wood (Clarence)*, both *supra*, an already service-connected veteran who becomes unable to secure or follow a substantially gainful occupation as a result of that service-connected disability has logically undergone an increase in disability. The veteran has gone from a state of being able to secure or follow a substantially gainful occupation, though not necessarily employed, to being unable to secure or follow a substantially gainful occupation.

11

Moreover, we are not persuaded by the Secretary's suggestion that application of section 5110(b)(2) to awards of TDIU is limited to those circumstances where there is a concomitant increase in the claimant's schedular disability rating. Although an increase to the next disability level during the one year prior to receipt of the claim is generally required for application of section 5110(b)(2), *see Hazan*, *supra*, in the context of an award of TDIU, an increase in the claimant's schedular rating for his service-connected disability is not necessarily required. That is because an award of TDIU pursuant to 38 U.S.C. § 4.16(a) requires both (1) a single service-connected disability rated at 60% or more (or multiple service-connected disabilities yielding a combined rating of 70% or more, with at least one of those disabilities rated 40% or more), and (2) an inability to secure or follow a substantially gainful occupation. For purposes of section 5110(b)(2), both criteria of a TDIU rating under § 4.16(a) are types of disabilities, and, therefore, provided that both criteria to support an award of TDIU are present during the applicable period, it is irrelevant which of the two criteria first became factually ascertainable. If it can be ascertained that either or both criteria manifested during the one year prior to receipt of the claim, then the "increase in disability" requirement of 38 U.S.C. § 5110(b)(2) is satisfied.

By this opinion, we do not intend to answer the question whether every award of TDIU is an award of increased compensation. We recognize that under some circumstances an award of TDIU may not amount to an award of increased compensation; for example, TDIU may be awarded as part of an initial award of disability compensation benefits. Therefore, our holding is limited to the factual scenario presented: The grant of an application for TDIU based on an inability to secure or follow a substantially gainful occupation as a result of an already service-connected disability and the concession by the Secretary that the TDIU award was based in part on the worsening of the service-connected PTSD.

Accordingly, we hold that a claimant awarded TDIU based on an already service-connected condition, which later renders him unable to secure or follow a substantially gainful occupation, is entitled to consideration of an effective date pursuant to section 5110(b)(2). *See Norris*, 12 Vet.App. at 421-22 (evidence of unemployability due to a 70% disability rating reasonably raised TDIU claim); *Green* and *Wood (Clarence)*, both *supra*. Hence, the Board is required to search the record to determine whether it is factually ascertainable that in the one year prior to the application there

12

was an increase in disability. *See Scott v. Brown*, 7 Vet. App. 184, 189 (1994) (approving Board's consideration of "all the evidence of record" for the year preceding the claim to ascertain whether disability increased in severity). As set forth above, an increase in disability can be demonstrated through satisfaction of either or both criteria of § 4.16(a).

#### 4. Application of Law to Facts

In the instant case, the Board erred when it concluded "*as a matter of law*" that entitlement to an earlier effective date for TDIU had not been established. R. at 5 (quoting Board (emphasis added)). Moreover, we are not convinced that the Board considered section 5110(b)(2) as it was required to do. First, the Board did not cite section 5110(b)(2) when reaching its determination on this matter. R. at 5. In fact, when it concluded, "*as a matter of law,*" that entitlement to an earlier effective date for TDIU had not been established, the Board specifically cited only to section 5110(a). *Id.* (emphasis added). Second, contrary to the Secretary's position, the Court is unable to discern from the Board's reasons or bases that it considered whether it was factually ascertainable that in the year prior to the application for TDIU there was an increase in disability. Although it appears that the Board may have searched the record for an informal claim or an intent to apply for TDIU prior to June 20, 2000 (R. at 20), it is not entirely clear that the Board reviewed the record with an eye toward whether the appellant's PTSD alone rendered him unable to secure or follow a substantially gainful occupation in that one-year period. *Compare* R. at 20 (Board's conclusory assertion that records regarding the period before June 20, 2000, reflect unemployability due to low-back disability), *with* R. at 291 (RO's conclusory assertion that evidence received shows appellant unable to work since 1994 as a result of PTSD). Whether an increase in disability occurred in the year prior to the application for TDIU, by its very nature, is a factual determination that must be made by the Board in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (court of appeals may remand if it determines that lower tribunal failed to make finding of fact essential to decision); *Wanless v. Principi*, 18 Vet.App. 337, 337 (2004) (per curiam order); *see also* 38 U.S.C. § 7104(d)(1); *Sammarco v. Derwinski*, 1 Vet.App. 111, 113-14 (1991) ("Whether the B[oard's] ultimate conclusions are correct or not, . . . the incomplete nature of the decision below does not permit proper review by this Court.").

Furthermore, that the increase in the appellant's PTSD disability rating from 50% to 70% and award of TDIU seemingly was based on the July 2000 VA compensation and pension examination does not relieve the Board of its responsibility to review the evidence of record to ascertain whether an increase in disability occurred in the one year prior to the application. *See Servello v. Derwinski*, 3 Vet.App. 196, 200 (1992) (although increased rating was based upon evidence submitted subsequent to application for increased rating, Board erred in not considering evidence about status of condition during one-year period prior to application). Therefore, because the Board failed to determine whether both criteria for TDIU under 38 C.F.R. § 4.16(a) were present during the one-year period prior to June 20, 2000, with either one first becoming ascertainable at any time during that period, the Court will remand the matter for application of 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2). *See Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991) (stating that the Board must consider and discuss all applicable provisions of law and regulation where they are made "potentially applicable through the assertions and issues raised in the record").

Further, we are not persuaded by the Secretary's argument that the appellant is not entitled to an effective date for TDIU earlier than the effective date of his 70% disability rating for PTSD. In making this argument, the Secretary ignores 38 C.F.R. § 4.16(b) (extraschedular TDIU), which does not contain the 60% disability rating criterion of § 4.16(a). On appeal, the appellant also argues that the Board erred when it failed to consider and apply the holdings in *Roberson* and *Bowling*, both *supra*, and 38 C.F.R. §§ 3.340(a) and 4.16(b). Nonetheless, because the appellant makes a terse argument in his opening brief on this matter and inasmuch as a finding of error will not result in a remedy broader than a remand, the Court will not address this assertion of error. *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (holding that, when remand is appropriate, the Court need not "analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand"); *cf. Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (appellant must plead with some particularity the allegation of error so the Court is able to review and assess the validity of the appellant's arguments). We, therefore, leave open the questions whether the appellant is entitled to a TDIU award based on § 4.16(b) and what criteria must be met for application of section 5110(b)(2) in connection with a TDIU award based on § 4.16(b). "A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course,

14

before this Court in an appeal, should the Board rule against him." *Best v. Principi*, 15 Vet.App. 18, 20 (2001). On remand, the appellant is free to submit additional evidence and argument and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).

## C. Service Connection for a Back Disability

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); 38 C.F.R. § 3.303(a) (2006).

A finding of service connection is a finding of fact reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Russo v. Brown*, 9 Vet.App. 46, 50 (1996); *Swann v. Brown*, 5 Vet.App. 229, 232 (1993). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Court may not substitute its judgment for the factual determinations of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance. *See id*. In addition, the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza*, 7 Vet.App. at 506; *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994).

15

## 1. *Statutory and Regulatory Provisions*

Section 1154(b) of title 38, U.S. Code, eases the evidentiary burden of combat veterans by permitting the use, under certain circumstances, of lay evidence. Section 1154(b) provides:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). The Secretary's implementing regulation similarly provides as follows:

> Satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions or hardships of such service even though there is no official record of such incurrence or aggravation.

38 C.F.R. § 3.304(d) (2006).

## 2. *Combat Veterans and Section 1154(b)*

Section 1154(b) has been interpreted to reduce the evidentiary burden for combat veterans with respect to evidence of in-service incurrence or aggravation of an injury or disease; it is not, as the appellant argues, equivalent to a statutory presumption that the claimed condition is service connected. *See Collette v. Brown*, 82 F.3d 389, 392 (Fed. Cir. 1996) ("Section 1154(b) does not create a statutory presumption that a combat veteran's alleged disease or injury is service-connected."); *see also Jensen v. Brown*, 19 F.3d 1413, 1416-17 (Fed.Cir. 1994) (noting that section 1154(b) "evinces a strong intent to provide generously for the service-connected disabilities of combat veterans by liberalizing the methods of proof allowed"); *Wade v. West*, 11 Vet.App. 302, 304-05 (1998) (discussing *Colette* and subsequent decisions of this Court interpreting section 1154(b) as reducing the evidentiary burden only as to the question of in-service incurrence). In other words, under section 1154(b), lay statements may be sufficient to establish the in-service incurrence of an injury or disease, but application of that section does not alter the fundamental requirements

16

of a current disability or a medical nexus to service (the first and third *Hickson, supra*, elements, respectively). *See Libertine v. Brown*, 9 Vet.App. 521, 523-24 (1996); *Caluza*, 7 Vet.App. at 507-08. Therefore, a veteran who establishes in-service incurrence of an injury or disease through application of section 1154(b) must nonetheless submit "sufficient evidence of a causal nexus between that in-service event and his or her current disability as required by *Caluza*." *See Wade*, 11 Vet.App. at 305; *see also Huston v. Principi*, 18 Vet.App. 395, 402 (2004); *Clyburn v. West*, 12 Vet.App. 296, 303 (1999) (holding that the provisions of section 1154(b) do not provide a substitute for medical nexus evidence).

Although the appellant dedicated a large portion of his brief to inviting the Court to adopt a change in existing law, i.e., one which would read section 1154(b) as eliminating the need for medical nexus evidence, we see no reason to depart from the Court's current interpretation of the benefit bestowed by 38 U.S.C. § 1154(b). The appellant seemed to concede as much during oral argument when he recognized that the right to receive compensation from VA requires evidence of a medical nexus between an in-service event and current disability. Moreover, because the Board failed to provide an adequate statement of reasons or bases for its conclusion regarding the second *Hickson* element, the matter must be remanded for readjudication. Therefore, we also deem it unnecessary to accept the appellant's invitation.

### 3. *The Board's Reasons or Bases*

In the decision on appeal, the Board denied the appellant's claim for service connection for a back disability upon finding that he had failed to satisfy the second *Hickson* element–in-service incurrence or aggravation of a disease or injury. R. at 14. In reaching this conclusion, the Board acknowledged the appellant's contention that he had injured his back during service in Vietnam and proceeded to analyze his claim pursuant to section 1154(b). Initially, the Board noted that the appellant's SMRs and separation examination report do not indicate that he had suffered a back injury during service. R. at 13. Both his entrance and separation examination reports state that his spine was evaluated as normal. Moreover, a separation report of medical history prepared by the appellant shows that he denied back trouble of any kind. To the extent that his SMRs show treatment for a "left flank contusion," the Board reasoned that the lack of subsequent treatment records, and no notation of back problems on separation, either by the appellant or the examiner, lead

17

"the Board to conclude that, even if this injury were to the back (rather than to the ribs or 'left flank'), it was transient in nature, and was not productive of a chronic disability." R. at 13.

The Board's analysis is faulty for a number of reasons. First, the Board failed to determine whether the appellant's lay evidence was satisfactory. *See Collette*, 82 F.3d at 393 (finding that section 1154(b) requires a three-step sequential analysis); *see also Caluza*, 7 Vet.App. at 507 (holding that section 1154(b) permits a combat veteran to establish in-service incurrence of an injury or disease through "lay or other evidence" if (1) the evidence is satisfactory; (2) the evidence is consistent with the circumstances, conditions or hardships of service; and (3) it can prevail notwithstanding the fact that there is no official record of the incurrence during service). Satisfactory evidence is evidence that is credible. *See id.* at 510-11. "Credible evidence" is "that which is plausible or capable of being believed." *Id.* at 506; *see also Collette*, 82 F.3d at 392.

Determinations of credibility are findings of fact to be made by the Board in the first instance. *See Caluza*, 7 Vet.App. at 512; *Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (finding that the weight and credibility of evidence "is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"); *see also Wood (Bruce) v. Derwinski*, 1 Vet.App. 190, 193 (1991) ("The [Board] has the duty to assess the credibility and weight to be given to the evidence."). In making a determination of whether the section 1154(b) presumption has been triggered, the Board is not permitted to weigh the veteran's lay evidence against contrary evidence. *See Collette*, 82 F.3d at 394. Nor may the Board rely on the absence of an official record to find the lay evidence not credible because that would be inconsistent with the purpose of section 1154(b). *See Dambach v. Gober*, 223 F.3d 1376, 1380-81 (Fed.Cir. 2000); *see also Buchanan v. Nicholson*, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (holding that the lack of contemporaneous medical records does not, in and of itself, render lay evidence not credible); *Caluza*, 7 Vet.App. at 511 (in determining whether lay evidence is satisfactory the Board may properly consider internal consistency, facial plausibility, and consistency with other evidence submitted on behalf of the veteran).

Rather than make this necessary credibility determination, the Board prematurely concluded that "the preponderance of the evidence does not demonstrate that the veteran incurred an in-service back injury or that, if he did, it was other than transient in nature and [was] resolved without any

18

residual disability." R. at 14. With respect to the Board's first conclusion that the preponderance of the evidence does not demonstrate that the appellant incurred an in-service back injury, we are unable to discern from the Board's reasoning whether it determined that the appellant's lay evidence was not credible, or whether it accepted the lay evidence as credible, but found that there was evidence to the contrary that weighed against finding an in-service back injury. Moreover, in the absence of a finding that the lay evidence was not satisfactory, the Board should have proceeded to analyze whether the alleged in-service injury was consistent with the circumstances, conditions, or hardships of service. *See Collette*, *supra*. Given this failure, the Board's statement of reasons or bases does not facilitate judicial review nor is it helpful to understanding the basis for the Board's decision.

With respect to the Board's alternative conclusion that any in-service back injury "was apparently transient in nature," this finding is a medical conclusion that the Board is not competent to make. R. at 14; *see McLendon v. Nicholson*, 20 Vet.App. 79, 85 (2006) ("The Board also erred in its finding that Mr. McLendon's in-service back injury was acute without chronic residual disability. Having found that Mr. McLendon suffered an in-service back injury, the degree of that injury and whether any disabilities resulted therefrom are medical assessments that the Board is not competent to render in the first instance."); *see also Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) (holding that the Board may consider only independent medical evidence in support of its findings and may not substitute its own medical opinion).

Finally, to the extent the Board concluded that the third *Hickson* element–medical nexus–was not satisfied, the Board improperly relied on an inadequate medical examination to reach this conclusion. The Board relied on the report of an April 2003 VA examination to conclude that "the record contains a medical conclusion by which the idea of a nexus between the veteran's current back disability and his military service is expressly rejected." R. at 15. The examination report contains the following conclusion: "After full review of [the claims] file and [SMRs], *I see no evidence of any back injury while in service* and it is my medical opinion that it is not likely that the veteran's present back problems are related to his military service." R. at 498 (emphasis added). A plain reading of this sentence suggests that the sole premise for the examiner's conclusion was the lack of notation or treatment of a back injury in service. Indeed, it appears that the medical examiner impermissibly

19

ignored the appellant's lay assertions that he had sustained a back injury during service. *See* R. at 496 (examiner recorded appellant's assertion that he had injured his back when an ammunition dump exploded, he was thrown by the force, and landed on his back); *see also Buchanan*, 451 F.3d at 1336 (noting that VA's examiner's opinion, which relied on the absence of contemporaneous medical evidence, "failed to consider whether the lay statements presented sufficient evidence of the etiology of [the veteran's] disability such that his claim of service connection could be proven"); *Coburn v. Nicholson*, 19 Vet.App. 427, 432 (2006) ("[R]eliance on a veteran's statement renders a medical report incredible only if the Board rejects the statements of the veteran."); *Reonal v. Brown*, 5 Vet.App. 458, 460-61 (1993) (a medical opinion based on an inaccurate factual premise has no probative value); *cf. Mariano v. Principi*, 17 Vet.App. 305, 312 (2003) (holding that VA medical examiner's conclusions were of "questionable probative value" because examiner failed to consider certain information).

Although a medical opinion based on recitations of a claimant that have been rejected by the Board is of little probative value, *see Coburn* and *Reonal*, both *supra*, the Board's consideration of the third *Hickson* element in this case specifically assumed an in-service back injury. R. at 15 ("[E]ven if the Board were to assume, for the purpose of this discussion only, that the veteran did incur an in-service back injury, the medical evidence fails to demonstrate a nexus between such assumed injury and his current disability."). Ipso facto, the medical examiner cannot rely on the absence of medical records corroborating that injury to conclude that there is no relationship between the appellant's current disability and his military service. *See Smith v. Derwinski*, 2 Vet.App. 137, 140 (1992) (noting that the purpose of section 1154(b) was "to overcome the adverse effect of a lack of official record of incurrence or aggravation of a disease or injury and treatment thereof" (citing H.R. Rep. No. 1157, 77th Cong., 1st Sess. (1941), *reprinted in* 1941 U.S.C.C.A.N. 1035)).

Therefore, in readjudicating on remand the appellant's claim for service connection for a back disability, if the Board determines that the evidence establishes in-service occurrence of a back injury, because the April 2003 VA examination was inadequate, VA's duty to assist requires VA to provide the appellant with an adequate medical examination of his back. *See* 38 U.S.C. § 5103A(d); R. at 494 (February 2003 Board determination that a medical examination was needed regarding the issue of service connection for residuals of a back injury).

20

Given this disposition, the Court will not address the remaining arguments and issues raised by the appellant. *See Best*, 15 Vet.App. at 20. On remand, the appellant is free to submit additional evidence and argument and the Board must consider any such evidence or argument submitted. *See Kay*, 16 Vet.App. at 534; *Kutscherousky*, 12 Vet.App. at 372-73. The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (West Supp. 2006) (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' briefs, the May 12, 2004, Board decision is AFFIRMED as to the Board's denial of an earlier effective date for the 70% disability rating for PTSD, VACATED as to the Board's denial of an effective date earlier than June 20, 2000, for the award of TDIU and as to the Board's denial of service connection for residuals of a back injury, and the two matters are REMANDED for readjudication consistent with this opinion.