Citation Nr: 1528207 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 12-15 517 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for right ear hearing loss.

2. Entitlement to service connection for a bilateral foot disability, to include pes planus and hallux rigidus.

3. Entitlement to service connection for a prostate disability, to include benign prostate hypertrophy (BPH).

4. Entitlement to service connection for a rectal condition, to include hemorrhoids (claimed as fecal leakage).


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs



ATTORNEY FOR THE BOARD

Kimberly A. Mitchell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1977 to July 1992.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a February 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. 

In November 2014, the Board remanded this appeal to the RO via the Appeals Management Center (AMC), in Washington, DC, for further development. The appeal has now been returned to the Board for appellate disposition. 

This appeal includes documents contained in the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of all of these records.

The issues of entitlement to service connection for a bilateral foot disability, to include pes planus and hallux rigidus, and entitlement to service connection for a rectal condition, to include hemorrhoids (claimed as fecal leakage) are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).







FINDINGS OF FACT

1. The Veteran does not have a current hearing loss disability for VA purposes in the right ear.

2. The Veteran does not have a current prostate disability, to include benign prostate hypertrophy (BPH).


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a hearing loss disability in the right ear have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

2. The criteria for entitlement to service connection for a prostate disability have not been met. 38 U.S.C.A. § 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.159 (2014); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error, rather than on VA to rebut presumed prejudice. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). 

The Board finds that any defect with regard to the timing or content of the notice to the appellant is harmless because of the thorough and informative notices provided throughout the adjudication and because the appellant had a meaningful opportunity to participate effectively in the processing of the claim with an adjudication of the claim by the RO subsequent to receipt of the required notice. The record does not show prejudice to the appellant, and the Board finds that any defect in the timing or content of the notice has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Specifically, by correspondence dated in October 2010, the Veteran was informed of the evidence and information necessary to substantiate the claims, the information required of the Veteran to enable VA to obtain evidence in support of the claims, the assistance that VA would provide to obtain evidence and information in support of the claims, and the evidence that should be submitted if there was no desire for VA to obtain such evidence. In the same letter the Veteran received notice regarding the assignment of a disability rating and effective date in the event of an award of VA benefits. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that an error is harmful or prejudicial falls on party attacking agency decision); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The Board considers it significant that statements made by the Veteran and his representative suggest actual knowledge of the elements necessary to substantiate the claim. Dalton v. Nicholson, 21 Vet. App. 23 (2007) (actual knowledge is established by statements or actions by the claimant or the claimant's representative that demonstrate an awareness of what is necessary to substantiate a claim). 

Thus, VA has satisfied its duty to notify the Veteran and had satisfied that duty prior to the initial adjudication. Overton v. Nicholson, 20 Vet. App. 427 (2006) (Veteran afforded a meaningful opportunity to participate effectively in adjudication of claim, and therefore notice error was harmless). 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and VA has notified the Veteran of any evidence that could not be obtained. The Veteran has not referred to any additional, unobtained, relevant, available evidence. VA has obtained examinations with respect to the claims in May 2011 and February 2015, and the Board finds the examinations to be adequate for rating purposes as the examiner reviewed the file and addressed the Veteran's symptoms. Thus, the Board finds that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 


Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2014). To establish service connection for a disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Certain chronic diseases, including sensorineural hearing loss, are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 

Moreover, for such chronic diseases, an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a); See 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2014). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

Right ear hearing loss

The Veteran is claiming entitlement to service connection for right ear hearing loss, which he asserts is due to exposure to acoustic trauma during active duty service. 

Impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 hertz, in ISO units, is 40 decibels or greater; or when the auditory thresholds for at least three of those frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2014). 

At the May 2011 audiological examination, audiological testing revealed puretone thresholds in the right ear at 500, 1000, 2000, 3000, and 4000 Hertz were 5, 15, 10, 20, and 20 decibels. Speech discrimination was 96 percent. Based on this testing, the Veteran was not found to have right ear hearing loss for VA purposes. The Board notes that the Veteran was found to have hearing loss in his left ear that is attributable to noise exposure during active duty service. 

Based on the Veteran's assertions that his hearing acuity continues to decrease, and the fact that the last VA audiological examination was three years old, in a November 2014 Board remand, the RO was instructed to schedule the Veteran for a new VA audiological examination. Specifically, the right ear was to be tested to determine whether a current hearing loss disability, for VA purposes, is present in the right ear, and if so, whether it is at least as likely as not that such a disorder was related to service. 

According to a February 8, 2015, report of general information, the AMC spoke with the Veteran who explained that he elected not to attend the newly scheduled audiological examination because he didn't feel that much had changed with his hearing loss. It appears that while the Veteran was aware of the purpose of the newly scheduled audiological examination, he chose not to attend. 

While VA has a statutory duty to assist in developing evidence pertinent to a claim, the Veteran also has a duty to assist and cooperate with VA in developing evidence; the duty to assist is not a one-way street. See Wood v. Derwinski, 1 Vet. App. 190 (1991). VA's duty must be understood as a duty to assist a veteran in developing his or her claim, rather than a duty on the part of VA to develop the entire claim with the veteran performing a passive role. Turk v. Peake, 21 Vet. App. 565, 568 (2008). Therefore, remand for an additional VA examination is not warranted as to the claim for service connection for a right ear hearing loss disability. The Board has no legal recourse but to decide the Veteran's claim on the basis of the existing record. 38 C.F.R. § 3.655 (2014). 

Service connection may only be granted for a current disability; when a claimed condition is not shown, there may be no grant of service connection. 38 U.S.C.A. § 1110 (West 2002); Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability). "In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Accordingly, based on the results of the May 2011 audiological examination the Board finds that the Veteran does not have a right ear hearing loss disability for VA purposes, and service connection for a right ear hearing loss disability must be denied. 


Prostate disability, to include benign prostate hypertrophy (BPH)

Service treatment records (STR's) reflect that in July 1983 the Veteran underwent elective vasectomy. A September 1995 report of medical examination for enlistment into the National Guard shows that the Veteran had an enlarged prostate with no nodules noted. A review of the Veteran's post-service treatment records reflect a history of BPH as given by the Veteran but show no other diagnosis or treatment for the condition. 

Based on the close proximity of the 1995 enlarged prostate diagnosis and 1992, the year the Veteran separated from active duty, the Veteran was afforded a VA examination to determine whether he had a current disability, and if so whether it is caused by or related to service, or in the alternative whether any current prostate disability is related to the in-service elective vasectomy. 

At the February 2015 VA examination, the Veteran denied any current symptoms of BPH or other prostate condition and reported good urinary habits with no required medication or treatment for a prostate condition. The Veteran's penis, testes, epididymis, and prostate were not examined per the Veteran's request. The examiner opined that it was less likely than not that the Veteran's BPH was incurred in or caused by service. The rationale provided was that the Veteran denied any current BPH symptoms or prostate conditions, and there is no evidence of PBH or other prostate condition being diagnosed or treated during Veteran's active duty service. The examiner additionally stated that the finding of BPH in 1995 was completely unrelated to the in-service vasectomy performed at the Veteran's request. 

In the absence of proof of present disability there can be no successful claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). See also Degmetich v. Brown, 104 F.3d 1328 (1997) (also interpreting 38 U.S.C. § 1131 as requiring the existence of a present disability for VA compensation purposes).

To be present as a current disability, there must be evidence of the condition at some time during the claim period. Gilpin v. West, 155 F. 3d 1353, 1356 (Fed. Cir. 1998); see also McClain v. Nicholson, 21 Vet. App. 319, 321 (2007) (the Gilpin requirement that there be a current disability is satisfied when the disability is shown at the time of the claim or during the pendency of the claim, even though the disability subsequently resolves).

In this case, the evidence shows that the Veteran was diagnosed with BPH in a 1995 National Guard entrance examination. There is no evidence that the Veteran had a prostate condition, to include BPH during his active duty service, and the only mention of BPH in the Veteran's post-service treatment records is in relation to the Veteran reporting a history of BPH. Furthermore, at the February 2015 VA examination, the Veteran denied having any symptoms of BPH or any other prostate condition. Additionally, there is no evidence that at the time of the claim or during the pendency of the claim, the Veteran had BPH or any other prostate condition.

Accordingly, in light of the lack of a current disability, the weight of the evidence is against a finding of a current prostate disability, to include BPH, and the claim for service connection must be denied. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for right ear hearing loss is denied.

Service connection for a prostate disability, to include BPH is denied.


REMAND

Although further delay is regrettable, the Board finds that additional development is necessary with respect to the remaining claims prior to appellate review. Where VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). As shown more fully below, the VA examination of record is inadequate as the examiner has failed to address the pertinent issues on appeal. Stefl v. Nicholson, 21 Vet. App. 120 (2007). 

Bilateral foot disability, to include pes planus and hallux rigidus

The Veteran contends that he has a bilateral foot disability as a result of his active duty service. 

The Veteran's service treatment records are silent for a diagnosis of or treatment for a foot condition. A September 1995 report of medical examination for enlistment into the National Guard shows that the Veteran had moderate pes planus that was asymptomatic. 

At an April 2011 VA foot examination, the Veteran stated that he had experienced pain in his feet since 1990. The examiner diagnosed bilateral mild pes planus deformity and bilateral hallux rigidus, which is mild on the right and moderate on the left. The examiner did not address the etiology of the conditions.

Based on the close proximity of the 1995 bilateral pes planus diagnosis and 1992, the year the Veteran separated from active duty, and the lack of opinion in the April 2011 VA examination, the Veteran was afforded a new VA examination to determine whether any bilateral foot condition, to include pes planus and hallux rigidus, may be related to active service. 

At the February 2015 VA foot examination, the Veteran reported progressive foot pain mostly on the left and loss of arch height. It is noted that the Veteran reported the use of arch supports but he remains symptomatic. The examiner noted pes planus pain on use, on the left side only. Likewise, symptoms due to hallux rigidus were noted to be severe, with function equivalent to amputation of great toe on the left side only. On physical examination, the Veteran had pain on the left foot but not the right. The examiner also noted that degenerative or traumatic arthritis was documented on the left foot. The examiner diagnosed bilateral flexible pes planus and hallux rigidus, although it is not clear whether the hallux rigidus is bilateral or only applies to the left foot. The examiner opined that the Veteran's foot condition was less likely than not incurred in or caused by service. The rationale provided was that while the Veteran has pes planus, he actually has no pain from it and pes planus is likely incidental. The examiner states that the Veteran's main issue is hallux rigidus of the left foot, which is a degenerative condition that is multifactorial in nature and unlikely to be related to his service. This opinion and rationale however, do not address the issue of whether the Veteran's current foot conditions could have been caused by or related to the stresses to the feet associated with working as an aircraft weapons technician, such as prolonged standing and heavy lifting on a flight line. Therefore, the Board finds this opinion to be inadequate, and the Veteran should be afforded a new VA examination to determine whether the Veteran has a current bilateral foot condition that is etiologically related to service. 

Rectal condition, to include hemorrhoids (claimed as fecal leakage)

The Veteran contends that he has hemorrhoids, also claimed as fecal leakage that had their onset on active duty. 

The Veteran's service treatment records are silent for a diagnosis of or treatment for a rectal condition. A September 1995 report of medical examination for enlistment into the National Guard shows an abnormality in the anus and rectum.

An October 2012 VA treatment note reflects that the Veteran reported a history of hemorrhoids and stated he experienced seepage of fecal brown liquid which stains his underwear and smelled very bad since around 1991. The Veteran was assessed with episodic fecal incontinence.

At a February 2015 VA examination, the examiner noted the Veteran's report of fecal leakage since 1991. The examiner also stated the Veteran admits that he has never received or required treatment, and his symptoms are increased if he is hot, stressed, or from certain foods such as sweets or caffeine. On examination, the examiner found small or moderate external hemorrhoids with no active bleeding, acute findings, active fecal leakage, or evidence of anal sphincter abnormality. The examiner opined that the Veteran's hemorrhoids were less likely than not related to service. The rationale provided was that the Veteran's STR's, including the separation examination are silent for any reported rectal issues at the time of separation. 

Unfortunately, the February 2015 opinion is not complete for rating purposes. The opinion and rationale is based on a lack of in-service treatment for a rectal condition, and does not take into account the Veteran's report of fecal leakage in service that he claims as hemorrhoids. Examinations are not sufficient where the examiner does not comment on the Veteran's report of relevant injury in service and, instead, relies on the absence of evidence in service medical records to provide a negative opinion. Dalton v. Nicholson, 21 Vet. App. 23 (2007). Therefore, the Veteran should be provided another VA examination before a new examiner in order to determine the nature and etiology of any rectal condition, to include hemorrhoids (claimed as fecal leakage).

Accordingly, the case is REMANDED for the following action:

1. The RO should associate with Virtual VA or VBMS any outstanding VA treatment records pertinent to the claims on appeal.

2. Schedule the Veteran for a VA examination with an examiner who hasn't previously examined him to determine the severity and etiology of any diagnosed bilateral foot disability. The examiner must review the claims file and must note that review in the report. All necessary tests and studies should be accomplished and all clinical findings reported in detail. The examiner should set forth all examination findings, along with the complete rationale for all conclusions reached. The examiner should provide the following:

Identify all diagnosed foot conditions and opine whether it is at least as likely as not (50 percent probability or greater) that any diagnosed foot condition is related to the Veteran's in-service duties as a weapons technician working on a flight line. 

The examiner should specifically address whether the 1995 diagnosis of bilateral pes planus is related to the Veteran's duties which included prolonged standing on a flight line, and heavy lifting over a 14 year period of active duty.

The examiner should also specifically address whether the April 2011 diagnosis of bilateral hallux rigidus is related to the Veteran's duties which included prolonged standing on a flight line, and heavy lifting over a 14 year period of active duty.

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so, and must state whether there is additional evidence that would permit the necessary opinion to be made.

3. Schedule the Veteran for a VA examination with an examiner who has not previously examined him to determine the severity and etiology of any diagnosed rectal condition, to include hemorrhoids. The examiner must review the claims file and must note that review in the report. All necessary tests and studies should be accomplished and all clinical findings reported in detail. The examiner should set forth all examination findings, along with the complete rationale for all conclusions reached. The examiner should provide the following:

Identify all diagnosed rectal conditions and opine whether it is at least as likely as not (50 percent probability or greater) that any diagnosed rectal condition is related to the Veteran's active duty service.

The examiner should address whether the 1995 anus and rectum abnormalities are related to the Veteran's report of fecal leakage since 1991. The examiner should consider credible the Veteran's report that he experienced fecal leakage since 1991.

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so, and must state whether there is additional evidence that would permit the necessary opinion to be made.

4. Thereafter, the RO/AMC should readjudicate the issues on appeal. If the determination remains unfavorable to the Veteran, he and his representative should be provided with a supplemental statement of the case (SSOC) that addresses all relevant actions taken on the claims for benefits, to include a summary of the evidence and applicable law and regulations considered, and the Veteran should be given an opportunity to respond to the SSOC prior to returning the case to the Board for further review.






The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
Michael J. Skaltsounis
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs