Citation Nr: 1339302 
Decision Date: 11/29/13 Archive Date: 12/13/13

DOCKET NO. 10-39 214 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a low back disability.

2. Entitlement to service connection for hepatitis C.

3. Entitlement to service connection for chronic bronchitis.

4. Entitlement to service connection for a right leg/ankle disability.

5. Entitlement to service connection for calluses of the bilateral feet, claimed as plantar warts.


REPRESENTATION

Appellant represented by: Disabled American Veterans



WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

E. D. Anderson, Counsel


INTRODUCTION

The Veteran served on active duty from May 1978 to April 1984.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

In September 2011, the Board remanded this matter to the RO via the Appeals Management Center (AMC) in Washington, D.C. to schedule the Veteran for a Travel Board hearing. The action specified in the September 2011 Remand completed, the matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). 

The Veteran testified before the undersigned Veterans Law Judge at a January 2012 personal hearing, and a transcript of this hearing is of record. 

The issues of entitlement to service connection for a low back disability, chronic bronchitis, and bilateral foot calluses are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.



FINDINGS OF FACT

1. The Veteran's hepatitis C did not have onset in service and is not otherwise etiologically related to her active military service.

2. The Veteran does not currently suffer from a right ankle or leg disability.


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for hepatitis C have not been met. 38 U.S.C.A. §§ 101, 1110, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2013). 

2. The criteria for entitlement to service connection for right ankle/leg disability have not been met. 38 U.S.C.A. §§ 101, 1110, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.304 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has reviewed all of the evidence in the claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to these claims. 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Board must note that in reviewing this case the Board has not only reviewed the Veteran's physical claims file, but the Veteran's file on the "Virtual VA" system to ensure a total review of the evidence. 

Service Connection

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2013). In general, service connection requires competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2013). 

Hepatitis C

The Veteran is seeking entitlement to service connection for hepatitis C. She has claimed that she contracted this condition in service either from an airgun inoculation or from exposure to blood from altercations and accidents while serving as a military police officer in service. However, the Veteran has also reported a blood transfusion in 1976 and exposure to blood as a police officer after separation from service. At her January 2012 hearing, the Veteran conceded that she did not know the cause of her hepatitis C.

The recognized risk factors for contracting the hepatitis C virus (HCV) are intravenous (IV) drug use, blood transfusions before 1992, hemodialysis, intranasal cocaine use, high-risk sexual activity, accidental exposure while a health care worker, and various kinds of percutaneous exposure such as tattoos, body piercing, acupuncture with non-sterile needles, and shared toothbrushes or razor blades. See VBA Fast Letter 211B (98-110) (November 30, 1998). According to VA Fast Letter 04-13 (June 29, 2004), HCV is spread primarily by contact with blood and blood products. The highest prevalence of HCV infection is among those with repeated, direct percutaneous (through the skin) exposures to blood (e.g., injection drug users, recipients of blood transfusions before screening of the blood supply began in 1992, and people with hemophilia who were treated with clotting factor concentrates before 1987). Id. The Fast Letter further states that occupational exposure to HCV may occur in the health care setting through accidental needle sticks. Id. Thus, a veteran may have been exposed to HCV during the course of his or her duties as a military corpsman, a medical worker, or as a consequence of being a combat veteran. Id. According to the Fast Letter, there have been no case reports of HCV being transmitted by an airgun injection. Id. Nevertheless, it is biologically plausible. Id. The Fast Letter concludes that it is essential that the examination report upon which the determination of service connection is made include a full discussion of all modes of transmission, and a rationale as to why the examiner believes the a particular mode of transmission was the source of the veteran's hepatitis C. Id.

The Veteran's service treatment records are negative for any treatment for hepatitis, liver disease, or jaundice. 

Post-service, the Veteran was not diagnosed with hepatitis until 2002. While VA and private medical records reflect treatment for hepatitis C, there is no evidence in these records relating the condition to service. 

In January 2009, the Veteran was afforded a VA examination to determine whether there is any relationship between her hepatitis C and service. The Veteran reported possible in-service exposure from airgun injections and blood splatter. She claimed her eyes turned yellow in service. 

The examiner stated that he could not offer the requested opinion because "such knowledge is not available in the medical literature and any opinion would be speculation." However, he then explained that he was unable to make any direct connection between the Veteran's service and her hepatitis. While the Veteran reported possible blood exposure in service and after as part of her police work, there is no evidence that any of those she was exposed to actually had hepatitis C. The examiner also noted that although the Department of the Army has not ruled out airguns as a means of infection, there is no actual verification that they cause transmission of hepatitis C. Finally, the examiner pointed out that the Veteran had received a blood transfusion prior to blood screening for hepatitis. 

Based on all the above evidence, the Board finds that entitlement to service connection for hepatitis C must be denied. While the Veteran has proposed several risk factors for hepatitis C in service, there is no medical evidence of a causal relationship between these factors and the Veteran's current disability. Absent this, the third element required to establish service connection has not been met.

Accordingly, entitlement to service connection for hepatitis C must be denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2013).

Right Leg/Ankle Disability

The Veteran is also seeking service connection for a right ankle or leg disability.

The Board has reviewed the Veteran's service treatment records, as well as VA outpatient treatment records and private medical records, and can find no evidence of a right ankle or leg disability either in service or currently. At her January 2012 hearing, the Veteran stated that she does not meet the criteria for a current right ankle/leg disability. 

Under 38 U.S.C.A. § 1131, a claimant must submit proof of a presently existing disability resulting from service in order to merit an award of compensation. See Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998). Here, as there is no evidence of a current disability, entitlement to service connection for a right leg/ankle disability is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2013).

The Duty to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159 (2013). Here, the Veteran was provided with the relevant notice and information in a May 2008 letter prior to the initial adjudication of her claim. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). She has not alleged any notice deficiency during the adjudication of her claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

VA also has a duty to assist the Veteran in obtaining potentially relevant records, and providing an examination or medical opinion when necessary to make a decision on the claim. Here, the Veteran's service records, VA records, Social Security Administration (SSA) records, and identified private treatment records have been obtained and associated with the claims file. The Veteran was also provided with VA examinations which, collectively, contain a description of the history of the disabilities at issue; document and consider the relevant medical facts and principles; and provide opinions regarding the etiology of the Veteran's claimed condition. VA's duty to assist with respect to obtaining relevant records and an examination has been met. 38 C.F.R. § 3.159(c); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

Finally, the Veteran testified at Travel Board hearing in January 2012. The hearing was adequate as the Veterans Law Judge who conducted the hearing explained the issues and identified possible sources of evidence that may have been overlooked. 38 C.F.R. 3.103(c)(2); Bryant v. Shinseki, 23 Vet. App. 488 (2010). 


ORDER

Entitlement to service connection for hepatitis C is denied.

Entitlement to service connection for a right leg/ankle disability is denied. 


REMAND

The Veteran is also seeking entitlement to service connection for a low back disability, chronic bronchitis, and calluses of the feet. The Veteran has testified that she was treated for all of these conditions in service and that after separation from service she has continued to suffers from low back pain, bronchitis, and calluses on a chronic basis.

In January 2009 and March 2010 reports, a VA examiner concluded that it is less likely than not that the Veteran's claimed disabilities are related to her active military service based on the lack of documentation of a chronic condition. However, the examiners focused on documentation in service treatment records or private medical records and failed to consider the Veteran's competent lay testimony establishing continuing symptomatology since service. 

The failure to consider the Veteran's credible lay statements regarding matters to which she is competent to testify, such as having chronic low back pain, upper respiratory problems or recurrent calluses, renders an examiner's opinion inadequate. See Dalton v. Nicholson, 21 Vet. App. 23, 39 (2007) (finding medical examination inadequate where examiner noted veteran's assertions of in-service back injury during the examination interview but then inexplicably concludes that "it is not likely" that the veteran's back problems were related to service because he found "no evidence of any back injury while in service").

Accordingly, on remand, the Veteran should be scheduled for new VA examinations of her low back disability, chronic bronchitis, and bilateral foot calluses.

Accordingly, the case is REMANDED for the following action:

1. Associate the Veteran's most current VA outpatient treatment records with her claims folder.

2. Once this is done, the RO should schedule the Veteran for a VA examination of her low back condition. The examiner should note any functional impairment caused by the Veteran's disability, including a full description of the effects of her disability upon her ordinary activities, if any.

The VA examiner is asked to opine whether it is at least as likely as not (fifty percent or greater) that the Veteran's low back disability had onset in service or is otherwise etiologically related to the Veteran's active military service.

A complete rationale for these opinions should be provided. All opinions should be based on examination findings, historical records, and medical principles. The examiner should fully articulate a sound reasoning for all conclusions made. 

Additionally, the examiner is also reminded to consider the Veteran's lay statements regarding the nature and onset of her disability.

With respect to the Veteran's low back disability, this includes her testimony of chronic low back pain since service, as well as her accounts of the physical demands of her active military service.

If the requested opinions cannot be provided without resorting to mere speculation, the examiner should so state but, more importantly, explain why an opinion cannot be provided without resorting to speculation, as merely stating this will not suffice.

The Veteran's claim folder and a copy of this REMAND should be furnished to the examiner, who should indicate in the examination report that he or she has reviewed the claims file. 

All findings should be described in detail and all necessary diagnostic testing performed. 

The claims file must be properly documented regarding any notifications to the Veteran as to any scheduled examination. 

3. The RO should also schedule the Veteran for a VA examination of her chronic bronchitis. The examiner should note any functional impairment caused by the Veteran's disability, including a full description of the effects of her disability upon her ordinary activities, if any.

The VA examiner is asked to opine whether it is at least as likely as not (fifty percent or greater) that the Veteran's chronic bronchitis had onset in service or is otherwise etiologically related to the Veteran's active military service.

A complete rationale for these opinions should be provided. All opinions should be based on examination findings, historical records, and medical principles. The examiner should fully articulate a sound reasoning for all conclusions made. 

Additionally, the examiner is also reminded to consider the Veteran's lay statements regarding the nature and onset of her disability.

With respect to the Veteran's chronic bronchitis, this includes her testimony of chronic upper respiratory problems since service, as well as her accounts of in-service exposure to smoke.

If the requested opinions cannot be provided without resorting to mere speculation, the examiner should so state but, more importantly, explain why an opinion cannot be provided without resorting to speculation, as merely stating this will not suffice.

The Veteran's claim folder and a copy of this REMAND should be furnished to the examiner, who should indicate in the examination report that he or she has reviewed the claims file. 

All findings should be described in detail and all necessary diagnostic testing performed. 

The claims file must be properly documented regarding any notifications to the Veteran as to any scheduled examination. 

4. The RO should schedule the Veteran for a VA examination of her bilateral foot calluses. The examiner should note any functional impairment caused by the Veteran's disability, including a full description of the effects of her disability upon her ordinary activities, if any.

The VA examiner is asked to opine whether it is at least as likely as not (fifty percent or greater) that the Veteran's foot calluses had onset in service or is otherwise etiologically related to the Veteran's active military service.

A complete rationale for these opinions should be provided. All opinions should be based on examination findings, historical records, and medical principles. The examiner should fully articulate a sound reasoning for all conclusions made. 

Additionally, the examiner is also reminded to consider the Veteran's lay statements regarding the nature and onset of her disability.

With respect to the Veteran's bilateral foot disability, this includes her testimony of chronic foot pain and recurrent calluses since service.

If the requested opinions cannot be provided without resorting to mere speculation, the examiner should so state but, more importantly, explain why an opinion cannot be provided without resorting to speculation, as merely stating this will not suffice.

The Veteran's claim folder and a copy of this REMAND should be furnished to the examiner, who should indicate in the examination report that he or she has reviewed the claims file. 

All findings should be described in detail and all necessary diagnostic testing performed. 

The claims file must be properly documented regarding any notifications to the Veteran as to any scheduled examination. 

5. When the development requested has been completed, and the RO has ensured compliance with the requested action, this case should again be reviewed by the RO on the basis of the additional evidence. If the benefits sought are not granted, the Veteran and her representative should be furnished a Supplemental Statement of the Case, and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).




 (Continued on the next page)

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs