Citation Nr: 1702649 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 09-04 109 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for a bilateral foot disorder. 

2. Entitlement to service connection for the residuals of a concussion. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Steve Ginski, Associate Counsel



INTRODUCTION

The Veteran served on active service from June 2002 through December 2005, with service in Iraq. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama.

This case consists entirely of documents in the Veterans Benefits Management System (VBMS) and Virtual VA. There are additional VA treatment records and VA examinations in Virtual VA. Documents in Virtual VA are otherwise duplicative of those in VBMS or redundant to the instant appeal. 

This matter was initially before the Board in February 2016. Then, the Board remanded the case to give the Veteran another opportunity to present testimony at a hearing. The hearing was scheduled for a date in December 2016, and a notification letter was submitted to the Veteran's address of record in October 2016. The Veteran failed to appear for his hearing, and he has not provided good cause for his absence. Therefore, the hearing request is deemed withdrawn. See 38 C.F.R. 
§ 20.704(d)(e) (2016

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

Remand is required for further development before adjudicating the Veteran's claim. Where VA provides the veteran with an examination in a service connection claim, the examination must be adequate. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). A medical conclusion must support its conclusions with analysis. Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007). Further, when the Veteran has provided lay testimony of an in-service event, an examiner cannot ignore that lay evidence and base his or her opinion that there is no relationship to service on the absence of in-service corroborating medical records. Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007). 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. 
§§ 1111 (West 2014); 38 C.F.R. § 3.304(b) (2015). Only such conditions as are recorded in examination reports are to be considered as noted. 38 C.F.R. 
§ 3.304(b). Where noted on entrance, preexisting injury or disease will be considered to have been aggravated during service when there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 U.S.C.A. § 1153 (West 2014); 38 C.F.R. § 3.306(a) (2015).

Bilateral Foot Disorder

By way of history, the Veteran's service entrance examination from January 2002 documents moderate asymptomatic pes planus. A January 2003 treatment note shows the Veteran complaining of painful flat feet. He reported having flat feet since well before his military service. The condition would cause pain while running. The Veteran also described having difficulty bending his big toe on both feet and experiencing loss of sensation in the toes when cold. The attending physician noted pain during the Veteran's basic training. The Veteran reportedly also had pain during high school football. The diagnosis was bilateral pes planus, congenital, and bilateral mild heel valgus. There were no bunions found. The Veteran was referred to podiatry for inserts.

X-rays from later in January 2003 showed a chip in the left hallux and calcification near the sesamoids in the right foot. There was pain to palpation in the bilateral tibial sesamoids. The assessment was bilateral sesamoiditis. The Veteran was also assessed for inserts in January 2003. In a different set of x-rays from January 2003, the Veteran's feet were noted to be normal. However, bilateral os trigonum was noted.

The Veteran again presented with pain in both feet, right greater than left, in August 2003. There was pain on palpation of the bilateral sesamoids. The Veteran was assessed with sesamoiditis. The Veteran was provided new inserts. A July 2005 service treatment record (STR) documents complaints of right lateral foot pain after sustaining a basketball injury two months prior. The Veteran had been on profile for approximately two weeks due to a motor vehicle accident, so he had not yet sought treatment for his right foot symptoms. The assessment was bilateral foot pain with a history of sesamoiditis and a right lateral foot contusion. The Veteran was placed on a profile with instructions to not run for 14 days. 

An August 2005 STR noted complaints of bilateral foot pain near the big toes and also pain in the right side of the right foot following a basketball injury four months previously. X-rays were normal. The physician found pes planus of both feet with arch elevation through passive supination while weight bearing. There was tenderness on palpation of the feet and bilateral fibular sesamoids. All other findings were normal. The diagnoses were bilateral flat foot with secondary sesamoiditis and metatarsalgia of the right fifth toe. A September 2005 in-service sick slip was provided for a right foot injury and pain due to trauma. The Veteran was put on a profile and told to run at his own pace with no rucking or formation running, and to wear athlete shoes. At his separation examination in 2005, the Veteran was noted to have bilateral plantar fascia and mild symptomatic pes planus. In his report of medical history, the Veteran reported bilateral foot pain since 2003. 

Post-service, VA treatment records document extensive treatment for what is generally referred to as foot pain. An April 2007 VA record indicated x-rays showed mild lateral flexion of the distal phalanges of the hallucis, minimal osteoarthritis and flexion deformities of the distal interphalangeal joints from the third to the fifth toes with overlapping of the fifth toes, and small OS trigonum. In a May 2007 VA record, the Veteran reported pain in both feet since 2002. This pain persisted despite going on profiles during service, receiving medication during and after service, and trying different types of shoes. The assessment was metatarsal phalangeal pain, bilateral, with bilateral digiti quinti varus, symptomatic. 

An August 2007 VA examination was provided. The Veteran reported a history of bilateral foot pain related to wearing boots and physical training during the military. The condition had reportedly progressively worsened. The examiner affirmed the findings of the April 2007 x-ray and rendered diagnoses of mild lateral flexion of the distal phalanges of the hallucis, minimal osteoarthritis and flexion deformities of the distal interphalangeal joints form the third to the fifth toes with overlapping of the fifth toes, and small OS trigonum. The examiner did not have the Veteran's medical record, so an opinion was not provided. 

A June 2012 VA feet examination was provided, again without the claims file, although VA medical records were reviewed. At that time, mild to low level arches were noted. No tenderness or other abnormalities of the feet were noted. A neurological examination was essentially normal. Regarding the bilateral pes planus, the examiner was not able to provide an opinion because he did not have the Veteran's medical records. An August 2013 VA opinion was obtained upon review of the claims file which contains the Veteran's STRs. The examiner opined that the Veteran's pes planus, which clearly and unmistakably existed prior to service, was clearly and unmistakably not aggravated beyond its natural progression by an in-service injury, event, or illness. The examiner noted the numerous foot treatments for the Veteran's flat feet during service, noting that the Veteran evidently didn't have any specific problems related to flat feet at that time. 

The August 2013 opinion is inadequate. First, the Veteran has received multiple diagnoses in his feet over the course of the claim but the examination addressed only pes planus. He also received numerous foot diagnoses during his military service. Second, the opinion provided by the August 2013 examiner uses the wrong legal standard for service connection. The Veteran's pes planus was noted on his entry examination in January 2002 and thus the opinion need only indicate whether the Veteran's pes planus was aggravated and whether the other foot disorders had onset in, or are otherwise related to, active service. The Board finds that remand is necessary to provide an examination that addresses these deficiencies. 

Residuals of a Concussion

Next, remand is necessary for the Veteran's claim of entitlement to service connection for residuals of a concussion. The Veteran's July 2005 separation examination notes loss of consciousness for one hour while playing basketball. STRs otherwise do not document any evidence of a head injury. 

A March 2012 VA traumatic brain injury (TBI) screening was conducted. The Veteran reported falling during military service and suffering a concussion. He reported losing consciousness, being dazed, confused, and seeing starts. Afterwards, the Veteran reported that he began having sensitivity to bright light, headaches, and sleep problems. He denied any current problems. A June 2012 VA TBI examination was conducted without the claims file. The Veteran reported a fall during service. It was noted he was a poor historian and that the Veteran reported he did not experience loss of consciousness during service. The examiner found there was no diagnosis of TBI for the Veteran. Rather, the Veteran had PTSD, schizophrenia paranoid type, and cannabis abuse. 

He presented for another second TBI evaluation at VA in October 2013. He reported only experiencing headaches when dehydrated. However, he had nightmares on a weekly basis. Later in the report, the Veteran is documented reporting falling on his head when playing football in 2003. He had a headache and difficulty in walking when returning to his room after. In 2004, he fell on his head while playing basketball. He reportedly experienced loss of consciousness. He was taken to the hospital, kept for 6 hours, and then released. He was diagnosed with a concussion. The Veteran reported having headaches that started after his 2003 football injury. 

In an August 2013 addendum opinion, the VA examiner noted that there was likely a head concussion during the Veteran's service, as there was in-service documentation of an event. The examiner also opined that the concussion itself was an acute condition and there was no documentation of sequelae to an in-service concussion. The examiner concluded that the evidence showed no residual effect of an in-service concussion. 

The August 2013 opinion is inadequate because the examiner's opinion does not reflect consideration of the Veteran's statements that he has experienced headaches since his head injury during military service. An addendum opinion is required to address the Veteran's competent lay statements. Dalton, 21 Vet. App. at 39-40.

Accordingly, the case is REMANDED for the following action:

1. Attempt to verify the Veteran's current address. In a July 2015 correspondence, he indicated that he was moving to an apartment from his then-current residence on Tremont Street. 

2. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

3. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

4. After the preceding development is completed, provide the Veteran with an appropriate examination to determine the etiology of any diagnosed foot disorders. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

First, the examiner must provide a diagnosis of all current foot disorders, to include pes planus, plantar fasciitis, heel valgus, os trigonum, sesamoiditis, metatarsalgia, osteoarthritis, and digiti quinti varus. If any of these disorders are not diagnosed, an explanation must be provided, to include discussion of the prior diagnoses of record in the Veteran's service treatment records and examination. 

Second, for each diagnosed foot disorder other than pes planus, the examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that each disorder had onset in or is otherwise related to military service, to include wear and tear sustained during basic training and physical training thereafter or a right foot contusion in July 2005.

Third, for the Veteran's diagnosed pes planus, the examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that the pre-existing asymptomatic moderate pes planus noted at the Veteran's June 1977 service enlistment medical examination was aggravated during service? If so, is it at least as likely as not that any increase in disability during service was due to the natural progression of the condition?

5. After the preceding development is completed, provide the Veteran with an appropriate examination to determine the etiology of any diagnosed residuals of a concussion. The entire claims file must be made available to and be reviewed by the examiner. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

First, the examiner must determine whether the Veteran has any residuals of a concussion. The examiner must specifically address the Veteran's statements that he has been suffering from headaches since a head injury sustained while playing football, during his military service. 

Second, if residuals of a concussion or TBI are diagnosed, examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that the residuals had onset in, or are otherwise related to service, to include as due to the in-service fall. 

6. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claims. 38 C.F.R. §§ 3.158, 3.655 (2016). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

7. Ensure compliance with the directives of this remand. If a report is deficient in any manner, implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

8. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs