Citation Nr: 1755121 
Decision Date: 11/04/17 Archive Date: 12/07/17

DOCKET NO. 13-05 903 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to service connection for a left foot disorder.

2. Entitlement to compensation under the provisions of 38 U.S.C. § 1151 for additional right foot disability incurred as the result of VA surgeries in April 2003 and March 2004.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

B. Moore, Associate Counsel



INTRODUCTION

The Veteran served on active duty from March 1976 to May 1978. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of a June 2011 rating decision of the St. Louis, Missouri, Regional Office (RO) of the Department of Veterans Affairs (VA). The Board remanded the Veteran's claims in April 2015. This case has returned to the Board for adjudication. 

The Board notes that the issue of entitlement to service connection for a back disability was granted by the RO in August 2015. That award constitutes a full grant, and that appeal has been resolved. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (holding that where an appealed claim for service connection is granted during the pendency of the appeal, a second notice of disagreement must thereafter be timely filed to initiate appellate review of the claim concerning "downstream" issues, such as the compensation level assigned for the disability and the effective date). 

The issue of entitlement to service connection for a left foot disorder is addressed in the REMAND portion of the decision below and is REMANDED to the agency of original jurisdiction (AOJ).


FINDINGS OF FACT

The evidence of record indicates that the Veteran's additional disabilities were reasonably foreseeable consequences of the April 2003 and March 2004 procedures, performed by VA after obtaining informed consent from the Veteran, and not the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the surgical treatment.




CONCLUSION OF LAW

The criteria for compensation under 38 U.S.C. § 1151 for residuals of April 2003 and March 2004 procedures performed by VA have not been met. 38 U.S.C. § 1151 (2012); 38 C.F.R. § 3.361 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

The VCAA, codified in part at 38 U.S.C. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a veteran in developing information and evidence necessary to substantiate their claim. Under 38 U.S.C. § 5103(a), VA must notify a veteran of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence a veteran is expected to provide. By correspondence dated July 2010, VA notified the Veteran of the information required to substantiate his claim of entitlement to compensation under 38 U.S.C. § 1151 and 38 C.F.R. § 3.361. 

As to the duty to assist, VA has made reasonable efforts to identify and obtain relevant records in support of the Veteran's claim. See 38 U.S.C. § 5103A(a), (b) and (c). The RO has obtained the Veteran's VA medical records, including records related to the surgeries at issue. The RO provided the Veteran with an examination in May 2011, to assess whether the Veteran suffered from additional disability for which he would be entitled to compensation under 38 U.S.C. § 1151. The RO obtained an independent medical opinion in December 2015, in order to cure duty to assist deficiencies discussed in the Board's April 2015 remand of this case, which also discussed the surgeries at issue. The Board finds these reports adequate to decide the Veteran's claim. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). 

The Board also finds that the RO has substantially complied with the Board's prior remand directives. See Stegall v. West, 11 Vet. App. 268, 270-71 (1998) (holding that a remand by the Board imposes upon the Secretary of VA a concomitant duty to ensure compliance with the terms of the remand, and that the Board itself commits error as a matter of law in failing to ensure this compliance). The Board concludes that no further assistance to the Veteran in developing the facts pertinent to this claim is required.


II. Legal Criteria

Under 38 U.S.C. § 1151, if VA hospitalization, medical treatment, or surgical treatment, results in additional disability or death that is not the result of the veteran's own willful misconduct or failure to follow instructions, the veteran is entitled to compensation awarded in the same manner as if the additional disability or death were service-connected. See 38 C.F.R. § 3.361.

To establish causation, the evidence must show that the hospital care, medical treatment, or surgical treatment, resulted in the veteran's additional disability or death. Merely showing that a veteran received hospital care, medical treatment, or surgical treatment, and that the veteran had additional disability or died following that treatment, does not establish cause. See 38 C.F.R. § 3.361(c). Hospital care, medical or surgical treatment, or examination cannot cause the continuation or natural progress of a disease or injury for which the care, treatment, or examination was furnished unless VA's failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. See id. 

The proximate cause of disability or death is the action or event that directly caused the disability or death, as distinguished from a remote contributing cause. To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical treatment, or surgical treatment, proximately caused a veteran's additional disability or death, it must be shown that the hospital care, medical treatment, or surgical treatment, caused the veteran's additional disability or death, and that VA either: (i) failed to exercise the degree of care that would be expected of a reasonable health care provider; or (ii) furnished the hospital care, medical treatment, or surgical treatment, without the veteran's informed consent. See 38 C.F.R. § 3.361(d).

To determine whether there was informed consent, VA must consider whether the health care provider substantially complied with the requirements of 38 C.F.R. § 17.32. Minor deviations from the requirements of 38 C.F.R. § 17.32, which prove to be immaterial under the circumstances of a particular case, will not defeat a finding of informed consent. Consent may be express (i.e., given orally or in writing) or implied under the circumstances specified in 38 C.F.R. § 17.32(b) (i.e., in emergency situations). See 38 C.F.R. § 17.32(c). 

Whether the proximate cause of a Veteran's additional disability or death was an event not reasonably foreseeable is determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable, but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures described in 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d).


III. Facts

VA performed a bunionectomy and osteotomy on the Veteran's first and fifth metatarsals of his right foot. This procedure occurred on April 9, 2003. The record indicates that the Veteran signed a consent for treatment form on April 2, 2003, which stated, including in layman's terms apparently written by the Veteran, that the procedure was for the "correction of bunion on both sides of right foot." A separate April 2003 VA treatment record indicates that the Veteran was cautioned that the following could occur as a result of the aforementioned surgery: infection, loss of digit and/or foot, prolonged swelling, numbness and/or tingling, blood clots, suture reaction, medication reaction, floppy and/or flail toe, and recurrence of deformity. The treatment record also notes that the procedure was to provide "relief of painful symptoms." 

A VA treatment record which summarized the surgery performed on the Veteran indicates that "the medial eminence was resected from the first metatarsal head. A Reverdin-Green-Laird type osteotomy was next performed on the metatarsal head and shaft. . . . Fixation of the osteotomy site was then achieved via a 2.7 mm cortical screw." Next, the "large lateral eminence of the fifth metatarsal head was resected via power instrumentation. . . . A Hohman type osteotomy was next performed at the surgical neck of the fifth metatarsal head. . . . A 2.0 mm cortical screw was next utilized for permanent fixation." 

VA treatment records from April, May, and June of 2003, indicate that the Veteran experienced throbbing pain in his right foot following surgery, and note that the Veteran's foot did not display signs of infection. An August 2003 VA treatment record indicates that imaging of the Veteran's right foot revealed "delayed union of the osteotomy site of the 5th metatarsal[.] . . . The internal fixation is the only bridge for the two fragments." The Veteran's physician recommended use of a bone growth stimulator. 

A September 2003 VA treatment record revealed similar findings to those of the August 2003 VA treatment record. A VA treatment record recorded days later notes that imaging of the Veteran's right foot indicated that the Veteran suffered from osteomyelitis affecting the fifth metatarsal at the "previous osteotomy site/delayed union." The Veteran was scheduled for a bone scan and provided antibiotics. Following the bone scan, the Veteran was diagnosed with "[a]vascular necrosis of the [metatarsal] head vs [o]steomyelitis."

A January 2004 VA treatment record noted the Veteran as suffering from "thick, painful calluses." The Veteran reported improvement in "the non[-]union area [of his] right foot[,]" but noted "pain underneath [his] big toe." The Veteran also reported "numbness at the tip and between [the] 1st and 2nd toe, right foot." Imaging performed that month noted delayed/nonunion affecting the fifth metatarsal, with "possible underlying infection surrounding the hardware." A February 2004 VA treatment record reveals similar findings to those described in January 2004 treatment records. 

VA performed a hardware removal procedure on the Veteran's first and fifth metatarsals of his right foot on March 10, 2004. The record indicates that the Veteran signed a consent for treatment form on March 5, 2004, which stated, including in layman's terms apparently written by the Veteran, that the procedure was for the "removal of 2 screws[,] right foot[.]" A separate March 2004 VA treatment record indicates that the Veteran was cautioned that the following could occur as a result of the aforementioned surgery: infection, loss of digit and/or foot, prolonged swelling, numbness and/or tingling, blood clots, suture reaction, medication reaction. The treatment record also notes that the procedure was to provide "relief of painful symptoms." A VA treatment record which summarized the surgery performed on the Veteran indicates that VA personnel removed the screws previously placed in his first and fifth metatarsal. 

Post-operative records from March 2004 note that the Veteran did not appear to suffer from an infection related to the surgery. A May 2004 VA treatment record indicates that the Veteran suffered from a painful callus affecting the first metatarsal of his right foot, and that he experienced pain with walking. An August 2004 VA treatment record notes that the Veteran suffered from "thick, painful toenails and painful calluses." Imaging performed that month notes deformity of the first metatarsal, following the second surgery, with deformity of the right metatarsal. 

The Veteran filed a claim for benefits under 38 U.S.C. § 1151 in June 2010. As part of his claim, the Veteran stated that his surgeons removed "the wrong bone from [his] foot and stated they would have to do another surgery and remove another bone to make [his] feet any better."

A May 2011 VA examination to assess the Veteran's right foot indicates that the Veteran suffered from painful motion, swelling, instability, and other symptoms, affecting his right foot. The author of the corresponding examination report noted that "[n]o other bones or parts of bones were removed other than those for which the patient provided informed consent. He was specifically advised of complications which could occur, and agreed to proceed." The report also indicates that the Veteran suffered from painful calluses as a result of "his gait pattern," which "involves stress on the forefoot . . . [for which] the weight of his body began to be primarily born by his right distal plantar 1st metatarsal bone and his right 5th metatarsal base leading to callus formation at these two sites." The report notes that the Veteran reverted to this gait pattern when his dressings were removed, and that his recurrence of painful callouses was most likely due to this gait pattern. In discussing the potential side effects which could result from the surgeries, the examiner noted that the Veteran was "advised of nine specific complications," including recurrence of deformity. The examiner opined that the Veteran suffered from deformity following the surgery, and noted that the Veteran could have suffered from a soft tissue infection as well.

A December 2015 independent medical examination report notes that "[t]here was no evidence of neglect, carelessness, lack of proper skill, error in judgement or fault on VA's part in furnishing the medical or surgical treatment or that the proximate cause of additional disability was an event which was not reasonably foreseeable despite the right foot outcome." The report also notes that "the Veteran's additional disabilities, to include callous formation on the balls of his feet and degenerative joint disease . . . are reasonably foreseeable outcome[s] of the Veteran's VA right foot surgeries because of the [Veteran's] continued 'abnormal' weight distribution across the forefoot (metatarsal heads) with gait," and discusses how the Veteran's "abnormal structural architecture" of the right foot, as well as inherent instability and deviation of joints in his right foot, with surgical re-alignment, led to his additional disabilities. 


IV. Analysis

The evidence of record indicates that the Veteran suffered from additional disability as the result of the surgeries performed in April 2003 and March 2004, including in the form of painful callouses and delayed/nonunion affecting the fifth metatarsal (degenerative joint disease). The central inquiries in this case are whether: (1) the Veteran's additional disability was the result of some fault in the care provided, including "carelessness, negligence, lack of proper skill, error in judgment, or some other similar instance of fault" during the procedures; (2) whether the Veteran provided informed consent for the procedures; and (3) whether the Veteran's additional disabilities were the result of an event not reasonably foreseeable. See 38 C.F.R. § 3.361. 

It appears from the evidence, including the consent for treatment forms signed by the Veteran, treatment records indicating that the procedures were explained to the Veteran, and opinions provided in the May 2011 and December 2015 examination reports, that the Veteran's additional disabilities were reasonably foreseeable outcomes of the April 2003 and March 2004 procedures. See 38 C.F.R. § 3.361(d). The evidence also indicates that the risks inherent to the April 2003 and March 2004 procedures were explained to the Veteran, and that the Veteran provided informed consent for the procedures. See 38 C.F.R. § 3.361(d), 17.32. The Board notes the consent forms signed by the Veteran prior to each procedure, in which he attested that he received an explanation of the procedures, was told of the risks and benefits of the procedures, informed of alternatives to surgery, was provided with an opportunity to ask questions, and chose to go forward with the procedures. See 38 C.F.R. § 17.32.

The evidence of record also suggests that the April 2003 and March 2004 procedures were performed with the degree of care that would be expected of a reasonable health care provider. Moreover, recurrence of deformity and loss of digit, which account for the Veteran's callouses and nonunion/delayed union affecting his fifth metatarsal, were expressly noted as possible outcomes of the surgeries performed. It does not appear from the record that these additional disabilities were the result of "carelessness, negligence, lack of proper skill, error in judgment, or some other similar instance of fault" during the procedures, and both examination reports attribute the Veteran's additional disabilities, in great part, to a continuation of gait issues suffered by the Veteran prior to the surgery. There is some discussion in the record as to whether the Veteran suffered from osteomyelitis as the result of an infection, but this was also contemplated by the informed consent provided by the Veteran. Given the detailed records describing the surgeries, and the opinions contained in May 2011 and December 2015 examination reports, the Board finds that the additional disabilities incurred by the Veteran as a result of the surgeries performed in April 2003 and March 2004 have not met the requirements for entitlement to compensation under 38 U.S.C. § 1151.

Though Board is sympathetic to the Veteran's situation, as described above, the law does not permit compensation to be awarded in these circumstances.


ORDER

Compensation under 38 U.S.C. § 1151 for residuals of the April 2003 and March 2004 procedures performed by VA is denied.


REMAND

In its April 2015 remand of this case, the Board requested a new examination to assess the cause of any left foot disorder(s) the Veteran may suffer from. The RO provided this examination in July 2015. The opinion discussing the Veteran's left foot, provided in a corresponding examination report, constitutes a conclusory statement which lacks a supporting rationale. See Stefl, 21 Vet. App. at 125 ("[A] mere conclusion by a medical doctor is insufficient to allow the Board to make an informed decision as to what weight to assign to a doctor's opinion."). Moreover, the opinion contained in the July 2015 VA examination report relies on the absence of evidence in the Veteran's service treatment records, and does not discuss the Veteran's statements that footwear worn in service resulted in his disorder of the left foot . See Dalton v. Nicholson, 21 Vet. App. 23, 39 (2007) (holding that a VA examination was inadequate because the examiner failed to comment on the Veteran's report of an in-service injury and relied on the absence of evidence in the Veteran's service treatment records to provide a negative opinion); see also Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (finding that the lack of contemporaneous medical records does not, in and of itself, render lay evidence not credible). 

Accordingly, the case is REMANDED for the following action:

1. The AOJ should return the record to the VA examiner responsible for the July 2015 examination for an addendum medical opinion. The examiner must review the entire record. Based on the factual evidence of record, the examiner should provide opinions that respond to the following:

Is it at least as likely as not (a 50% or better probability) that the Veteran's current disability of the left foot was caused by any incident of the Veteran's military service (to include his use of military footwear), or is otherwise related to his active service? The examiner should address the Veteran's lay statements attributing his disorder of the left foot to his service. 

The term "at least as likely as not" does not mean within the realm of medical possibility, but rather the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of that conclusion as it is to find against it.

A detailed explanation (rationale) is requested for all opinions provided. (By law, the Board is not permitted to rely on any conclusion that is not supported by a thorough explanation. Providing an opinion or conclusion without a thorough explanation will delay processing of the claim and may also result in a clarification being requested).

2. Readjudicate the Veteran's claim. If the benefits sought remain denied, furnish to the Veteran and his representative a Supplemental Statement of the Case.

The Veteran has the right to submit additional evidence and argument on remanded matters. Kutscherousky v. West, 12 Vet. App. 369 (1999). Remanded matters must be handled expeditiously. 38 U.S.C. §§ 5109B, 7112.





______________________________________________
VICTORIA MOSHIASHWILI 
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs