﻿Citation Nr: 19158980
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 11-29 650
DATE: July 30, 2019

ORDER

Entitlement to service connection for a bilateral knee disability, diagnosed as degenerative joint disease, is granted.

REMANDED

Entitlement to a disability rating in excess of 10 percent for bilateral hearing loss on and after November 17, 2010 is remanded.

Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU) is remanded. 

FINDING OF FACT

The evidence is in relative equipoise as to whether the Veteran’s bilateral knee disability diagnosed as degenerative joint disease, is causally or etiologically related to his service.

CONCLUSION OF LAW

The criteria for service connection for a bilateral knee disability, diagnosed as degenerative joint disease, are met. 38 U.S.C. § 1131, 5017(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from July 1976 to September 1978. 

The Board notes that the Regional (RO) in a December 2016 rating decision denied special monthly compensation (SMC) based on aid and attendance/housebound status. In March 2017 the Veteran filed a notice of disagreement (NOD) with the denial of the SMC claim and requested a Decision Review Officer (DRO) hearing. In a May 2018 rating decision the RO denied the Veteran’s claim of entitlement to service connection for kidney failure. In July 2018 the Veteran filed a NOD with the decision to deny his claim for kidney failure and requested a DRO hearing. The RO in an October 2018 rating decision denied service connection for sleep apnea, idiopathic thrombocytopenic purpura, and sinusitis. The Veteran filed a NOD in December 2018 and requested a DRO hearing. 

A May 2019 deferred rating decision indicates that the case will be returned to the RO for a DRO hearing. Further, the Veterans Appeals Control and Locator System (VACOLS) shows the Veteran’s service connection claims for nephrolithiasis, SMC, and sleep apnea are in NOD status. Thus, the RO is aware of the above claims and the Board will not be addressing them at this time.

Issue 1: Entitlement to service connection for a bilateral knee disability, to include degenerative joint disease (DJD), to include as due to exposure to contaminated water at Camp Lejeune.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease initially diagnosed after service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Under 38 C.F.R. § 3.303(b), service connection will be presumed where there are either chronic symptoms shown in service or continuity of symptoms since service for diseases identified as “chronic” in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013). Arthritis is a “chronic disease” listed under 38 C.F.R. § 3.309(a). The presumptive service connection provisions of 38 C.F.R. § 3.303(b) apply to the Veteran’s claim for service connection for a bilateral knee disability, to include DJD (arthritis). 

Considering the claim for service connection for the Veteran’s bilateral knee disability, to include DJD, in light of the record and the governing legal authority, the Board finds that the evidence is in relative equipoise on the question of a nexus. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). A March 2015 VA examination shows that the Veteran was diagnosed with degenerative arthritis in the right knee in 2008 and in the left knee in 2010. 

In his March 2009 claim, the Veteran contended that he has had knee damage since service. During his May 2014 Board hearing, the Veteran indicated that he injured his knees during service while he was on the road and had to work with big military tires. The Veteran explained that after he was discharged from service he did not know how to seek help from VA. 

The Veteran’s contentions are credible and consistent with the circumstances of his service, as his DD 214 Form shows his military occupational specialty was heavy vehicle operator. Service treatment records show that in July 1976 the Veteran was treated for a right knee sprain after he was pushed and feel on the right knee. In December 1976 the Veteran complained of right knee pain. In August 1977 the Veteran was treated for a left knee muscle strain, which the examiner indicated was associated with trauma from working with heavy instruments. 

As a lay person, the Veteran is competent to report symptoms of knee pain. Furthermore, he indeed is competent to state that the bilateral knee pain he experiences today is similar to the one he suffered in service. Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). The Veteran has consistently and competently presented credible evidence of continuous bilateral knee symptoms existing since service. 

With regard to the matter of nexus, the Board acknowledges that there are unfavorable VA opinions of record dated in January 2010 and March 2015. The January 2010 VA examination need not be further addressed as the Board in a July 2014 remand determined that it was inadequate. 

As for the VA examination in March 2015, the examiner opined that it is less likely as not that the Veteran’s bilateral knee disability is related to any in-service event or injury based on the rationale that the Veteran’s knee strains in service were acute and transitory and cited to medical literature that shows acute knee strains resolve within days to weeks. The examiner determined that there was no documentation in the service treatment records nor immediately after service to establish chronicity of the Veteran’s claimed bilateral knee condition. The examiner noted that the Veteran worked in civil engineering for many years and in the 1990s underwent a right knee meniscectomy. The examiner concluded that it is at least as likely as not that the Veteran’s bilateral knee condition was incurred as a result of his civil engineering job. 

However, the Board finds the opinion to be inadequate as the VA examiner in the rationale focused on the Veteran’s knee strains documented in the service treatment records and not on the Veteran’s ongoing complaints of bilateral knee pain since service. To the extent that the examiner determined that there is no documentation to establish chronicity during service or after service, the examiner did not adequately consider the Veteran’s lay statement of continuity of symptoms since service. A medical examination is inadequate where the examiner impermissibly ignored the Veteran’s lay assertions regarding onset of symptoms or injury during service. Dalton v. Nicholson, 21 Vet. App. 23, 39-40 (2007). Lay evidence concerning continuity of symptoms after service, if credible, can ultimately be considered competent, regardless of a lack of contemporaneous medical evidence, and can alternatively establish a relationship between the current disability and injury in service. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

To the extent that the Veteran may have had knee injuries incurred not in service, as it is not possible to distinguish the effects of the nonservice-connected disability from those of the service-connected disability, the reasonable doubt doctrine dictates that all symptoms be attributed to the service-connected disability. See Mittleider v. West, 11 Vet. App. 181 (1998). It is also noteworthy that while on the March 2015 VA examination the examiner indicated that the Veteran fell off an operating machine in the early 1980s, the examiner pointed out that the Veteran reported that he fell backwards and did not incur any knee injury from this accident. 

Thus, the evidence for and against the Veteran’s claim is in relative equipoise, the benefit-of-the-doubt rule applies, and entitlement to service connection for a bilateral knee disability, diagnosed as DJD, is granted. 

REASONS FOR REMAND

Issues 2-3: Entitlement to a disability rating in excess of 10 percent for bilateral hearing loss on and after November 17, 2010 and TDIU.

As for the Veteran’s claim for a rating higher than 10 percent for bilateral hearing loss on and after November 17, 2010, in the most recent Supplemental Statement of the Case (SSOC) dated in April 2019, the RO noted that there was improvement in the Veteran’s hearing acuity on his most recent VA audiological examination in June 2017. However, the RO determined that although there was improvement on the recent examination, because there is a history of inconsistent examination results which may or may not reflect improvement, a future examination will be scheduled to determine if the current evaluation is appropriate. Thus, as the RO has not completed the evaluation of the Veteran’s increased rating claim for bilateral hearing loss since November 27, 2010, the issue must be remanded for the Veteran to be scheduled for a VA audiological examination to determine the current level of severity of his bilateral hearing loss. 

As for the TDIU claim, the RO has not yet had the opportunity to effectuate a rating for the bilateral knee disability granted herein. Further, the Veteran’s claim of entitlement to TDIU is intertwined with the increased rating claim for bilateral hearing loss being remanded herein. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991). 

The matters are REMANDED for the following action:

Schedule the Veteran for a VA examination to determine the current severity of his bilateral hearing loss. The examination of hearing impairment should be conducted without the use of hearing aids. The examination must include a Maryland CNC Test to determine speech recognition scores and a pure tone audiometry test. For each ear, pure tone audiometric thresholds, in decibels, should be recorded for each of the frequencies at 1,000, 2,000, 3,000 and 4,000 Hertz, as well as the controlled speech discrimination testing—the Maryland CNC Test (reported in percentages of discrimination). The 

 

examiner is asked to describe the functional effects caused by this hearing disability, including on the Veteran’s occupational functioning and daily activities and as described in his own words.

 

ROBERT C. SCHARNBERGER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. Mac, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.